(115 So. 358)

No. 28684.

**WILLIAMS–RICHARDSON CO., Limited, v. NEW ORLEANS & N. E. R. CO.**

**In re NEW ORLEANS & N. E. R. CO.**

Nov. 28, 1927. Rehearing Denied Jan. 18, 1928.

*(Syllabus by Editorial Staff.)*

**1. Carriers ☞82—Carrier was bound to deliver shipment to consignee named only.**

Where shipment was consigned to W. H. Magee & Co., it was duty of carrier to make delivery to that firm only and not to firm of J. T. Magee & Co., located in town to which goods were shipped.

**2. Carriers ☞93—Carrier could not be excused for making delivery to wrong party because agent acted in good faith and was apparently imposed on by party to whom delivery was made.**

Where shipment was intended for W. H. Magee & Co., at Purvis, Miss., but goods were consigned to W. H. Magee & Co., at Prentiss, Miss., and goods were delivered to J. T. Magee & Co., at Prentiss, Miss., which claimed merchandise and accepted delivery and paid freight, carrier could not be excused for making wrongful delivery because its agent acted in good faith and was apparently imposed on by party to whom delivery was made.

**3. Carriers ☞93—Where shipper negligently directed shipment to wrong town, carrier delivering shipment to firm at that town with name similar to consignee held liable for loss.**

Where shipper negligently directed shipment to W. H. Magee & Co., at Prentiss, Miss., instead of Purvis, Miss., as intended, and carrier's agent, never having heard of W. H. Magee & Co., assumed that clerical error had occurred in initials and that shipment was intended for J. T. Magee & Co., which firm he knew frequently received consignments of goods from shipper, and delivered goods to J. T. Magee & Co., which claimed merchandise, accepted delivery, and paid freight, carrier on its original obligation of insurer *held* liable for loss.

O'Niell, C. J., dissenting.

Certiorari to Court of Appeal, Parish of Orleans.

Action by the Williams-Richardson Company, Limited, against the New Orleans & Northeastern Railroad Company. Judgment

165 LA.—2

for plaintiff was affirmed by the Court of Appeal, and defendant applies for certiorari or writ of review. Rule nisi discharged, and judgment affirmed.

Monroe & Lemann, and Walter J. Suthon, Jr., all of New Orleans, for petitioner.

John D. Miller, of New Orleans, for respondent.

ROGERS, J. We are called upon, in this proceeding, to review a decree of the Court of Appeal for the parish of Orleans, affirming a judgment of the civil district court for said parish.

The facts of the case are not seriously disputed. The plaintiff company is located in the city of New Orleans, where it is engaged in a wholesale mercantile business. Among its customers are the firms of W. H. Magee & Co., of Purvis, Miss., and J. T. Magee & Company of Prentiss, in the same state. The defendant is a common carrier, operating a line of railroad between the cities of New Orleans and Meridian; the latter being in Mississippi. Purvis is a town on the line of defendant's railroad. Prentiss is a town on the line of the Mississippi Central Railroad, which connects with the line of defendant's railroad at a point in Mississippi. The distance in a direct line between these towns is somewhere between 40 and 50 miles. The distance between them by railroad is somewhat greater.

The plaintiff company, on July 21, 1920, delivered to the defendant railroad company at New Orleans a case of cotton goods consigned to W. H. Magee & Co., at Prentiss, Miss. This was, however, admittedly, an error, plaintiff's intention being to ship the goods to Purvis, Miss. The error, however, was not discovered until some time thereafter, and the shipment went forward to Prentiss. When it reached that point on July 26, 1920, the agent of the connecting carrier, never having heard of W. H. Magee & Co., assumed that a clerical error had oc-

curred in the initials, and that the shipment was intended for J. T. Magee & Co., which firm he knew frequently received consignments of goods from the plaintiff company. He acted upon this assumption, and accordingly delivered the case of goods through a public drayman to J. T. Magee & Co., which claimed the merchandise, accepted the delivery, and paid the freight.

Subsequently the mistake was discovered, and in due time, presumably after it had attempted to secure an amicable adjustment thereof, the plaintiff company instituted this suit to recover the value of the goods. It obtained judgment as prayed for, and the judgment was affirmed on appeal.

The Court of Appeal ruled that the carrier must bear the loss incurred by plaintiff, because its paramount duty was to deliver the goods to the consignee; and, if an error in his name was made, defendant should have communicated with the consignor to ascertain the cause of the error.

Relator attacks the ruling, contending that the loss was due entirely to the fault of the plaintiff, and that as a carrier it is not liable for a misdelivery caused or induced by the error of the shipper in addressing or consigning the shipment.

[1, 2] The law governing the delivery of freight by carriers is tersely stated in 4 R. C. L. p. 838, § 291, as follows:

"The duty of a common carrier is not merely to carry safely the goods intrusted to him, but he is also required to deliver them to the party designated by the terms of the shipment, or to his order, at the place of destination. In fact, no obligation of the carrier is more rigidly enforced than that requiring delivery to the proper person; delivering them to one not entitled to receive them is a breach of duty, for which the carrier is accountable, and the law will allow no excuse for a wrong delivery except the fault of the shipper himself."

See, also, to the same effect, Hutchinson on Carriers (3d Ed.) vol. 2, § 668, pp. 739, 740.

Defendant's argument that the facts of the present case bring it within the exception to the rule would be sound and controlling, if the loss of the goods had resulted solely from their misdirection by the consignor, unaided by a careless breach of duty on the part of the carrier or its agent. But the exception itself is qualified by the further rule that, when it becomes obvious to the carrier or its agent that a mistake has been made in directing a shipment, both good faith and reasonable prudence dictate that the shipment should be held and inquiry made of the consignor for more complete and definite instructions. In such cases, it is not for the carrier or its agent to venture a guess as to what destination or what consignee the shipper intended and then to forward or to deliver the shipment according to said guess. Weaver v. Southern Ry. Co., 135 Mo. App. 210, 115 S. W. 500, and authorities therein cited.

In the case at bar, it is undisputed that the shipment was consigned to W. H. Magee & Co. It was the duty, therefore, of the carrier, to make the delivery to that firm only. When the goods arrived at Prentiss, the agent of the carrier, knowing there was no such firm at that place, and that delivery could not be made, should have warehoused the goods and notified the owner; instead of which he delivered them to the wrong person. Nor can the carrier be excused for making such delivery because its agent acted in good faith and was apparently imposed upon by the party to whom the delivery was made. Hutchinson on Carriers, ut supra; 4 R. C. L. § 297, pp. 844, 845.

[3] While the plaintiff was undoubtedly negligent in directing the shipment to Prentiss instead of to Purvis, nevertheless it is clear that the loss would not have occurred except for the intervening carelessness and inattention of the carrier. The carrier therefore, on its original obligation of insurer must bear the loss.

Relator cites and relies upon the following cases, viz.: Stimson v. Jackson, 58 N. H. 138; Missouri Iron & Metal Co. v. T. & P. Ry. Co. (Tex. Civ. App.) 198 S. W. 1067; Lake Shore & M. S. R. R. Co. v. Hodapp, 83 Pa. 22; Singer v. Merchants' Despatch Transportation Co., 191 Mass. 449, 77 N. E. 882, 114 Am. St. Rep. 635; Porter v. Ocean S. S. Co., 223 Mass. 224, 111 N. E. 864; and Phillipson & Co. v. Grand Trunk Western Railway Co., 238 Ill. App. 251.

After reading and analyzing these cases, our conclusion is that they are not exactly in point.

Stimson v. Jackson is authority only for the proposition that an express carrier is not liable for a misdelivery through a mistake in the direction of a parcel, if such mistake is not known to, or discoverable by, the carrier and the delivery is made according to the direction and the known course of business at the place of destination.

In the case presently before us, the error in the direction of the shipment was noticed by the agent of the carrier, according to the testimony in the record, immediately upon its arrival at Prentiss. Notwithstanding his knowledge of the mistake, he made the delivery by means of which plaintiff has suffered a loss.

Missouri Iron & Metal Co. v. T. & P. Railway Co.: The evidence in this case showed that the person to whom the delivery was made acted for the consignee in transactions with the consignor. The court held there was prima facie proof of such person's authority to receive the goods; and there was an absence of any evidence whatever tending to show that the consignees did not receive the goods receipted for by its prima facie agent. The defendant company was accordingly relieved of responsibility for the misdelivery.

Lake Shore & M. S. R. R. Co. v. Hodapp: In this case the shipment was received by the carrier in New York addressed "Leopold Hotelfa," for delivery at Erie, Pa. It was safely carried to its destination, where it lay in defendant's warehouse some two months, during which time no inquiry was made for it, whilst, on the other hand, the agents of the carrier made every effort to ascertain the consignee. The agents of the defendant finally concluded that the shipment was intended to be delivered at an establishment known as "Leopold's Hotel," the proprietor of which was accustomed to receive consignments of similar character for the numerous immigrants who, from time to time, stopped at his hotel. The contention in the case was that the defendant was liable, not for the extreme care exacted of carriers, but only for the ordinary care required of warehousemen. The court held that the defendant was not lacking in ordinary care in making the delivery; that, under the state of facts disclosed by the record, it could not be said it should have known it was making a wrong delivery when it committed the package to the proprietor of Leopold's Hotel; that nothing was more natural than to suppose the direction was intended for that hotel, to await the arrival of some German immigrant who, in his ignorance of the English language, had written or caused to be written "Hotelfa" for "Hotel"; that this view of the matter was strengthened by the fact that Leopold was accustomed to receive consignments of this kind.

In the case at bar, the shipment was not kept for any length of time by the carrier at the point of destination, and no diligence was used to ascertain the consignee. On the contrary, immediately upon the arrival of the shipment, and notwithstanding the misdirection was promptly noticed, it was delivered to one not entitled to receive it. The defendant carrier received the case of goods marked, partially, with the initials of the consignee, and it was bound to deliver it ac-

cordingly, or to have it remarked, if that was necessary, to insure its safe delivery.

Singer v. Merchants' Despatch Transportation Co.: The plaintiff was L. Singer of Boston, Mass. He consigned the shipment, not covered by a negotiable bill of lading, to L. Singer, of Springfield, Ill. The carrier delivered the shipment at destination to Lena Singer, who was in business there, and who had frequently received goods from the plaintiff. The court declared that the contract between the parties was to deliver the goods to L. Singer, Springfield, Ill., and that the defendant had performed the contract; that the intention of the consignor was immaterial, if not communicated to the carrier, the rights of the parties depending upon what is so communicated; that the carrier in making delivery is bound to follow that direction, whatever it may mean, under all the circumstances of the case. The court found that the plaintiff had intended to pledge the goods shipped as collateral for his draft for the unpaid balance of the purchase price; and it said to do that he should have had them billed to his own order and then indorsed the bill of lading to the bank discounting the draft. By mistake he billed the goods "straight," and is now seeking to make the defendant liable for his own blunder. The court held this could not be done.

Porter v. Ocean S. S. Co.: Here the goods were delivered to the carrier by the shipper, through her agent, an expressman. The expressman gave his name as the shipper and the correct name, but wrong address, of the consignee. The mistake was perpetuated in the bill of lading, which was delivered on the same day by the expressman to his principal, the shipper. The shipment was carried forward and delivered at its destination in accordance with the directions set forth in the bill of lading. Thereafter the shipper sued for damages for misdelivery. It was shown by the testimony that, although the bill of lading had been promptly given to the plaintiff; and that she knew the goods were incorrectly billed so far as the address of the consignee was concerned, she entered no protest nor repudiated the bill of lading until some three months thereafter, when, having been informed of the delivery to the wrong person, she notified the defendant she would hold it responsible for the loss. The court held that, in the absence of fraud, the carrier was justified in relying upon the bill of lading issued as expressing the entire contract, and that it was not liable for delivering the goods to the consignee indicated therein.

Phillipson & Co. v. Grand Trunk Western Railway Co.: The custom between plaintiff and defendant was for the latter, upon receipt of freight, to send notices of its arrival to the former, who thereupon would stamp the notices with a rubber stamp to constitute orders for delivery and send them to its firm of teamsters, to be used by them as evidence of authority to receive the goods from the carrier. The custom had been followed in the case at issue, and, the notice in question having been stamped by the plaintiff, consignee, was given to a young boy to be delivered to its teamsters, but the boy lost it or gave it to a stranger. The person who found the notice or received it from the messenger boy presented it to the defendant, paid the freight charges, and took the goods from defendant's freight house. The court properly held that the misdelivery was occasioned by the negligence of the plaintiff, and that the defendant was not liable therefor.

For the reasons assigned, the rule nisi herein issued is discharged, and the judgment of the Court of Appeal is affirmed at relator's cost.

O'NIELL, C. J. (dissenting). The principle that ought to govern this case—and that is overlooked in the majority opinion—is that,

where one or the other of two parties whose mistakes have caused a loss must suffer the loss, and where neither of them has intended to do wrong, the one who was primarily or mainly at fault, and whose mistake was the cause of the other's mistake, must bear the loss.

The plaintiff, Williams-Richardson Company, Limited, has a wholesale dry goods establishment in New Orleans, La. Among the regular customers of the establishment were the firm of W. H. Magee & Co., at Purvis, Miss., and the firm of J. T. Magee & Co., at Prentiss, Miss. The defendant, New Orleans & Northeastern Railroad Company, has its line of railroad extending from New Orleans, La., to Meridian, Miss. Purvis is on that road. Prentiss is on the Mississippi Central Railroad, which connects with the New Orleans & Northeastern Railroad somewhere in Mississippi, between New Orleans and Meridian. The distance between Purvis and Prentiss is about 50 miles by rail.

The plaintiff shipped a case of cotton goods in fulfillment of an order from W. H. Magee & Co., Purvis, Miss., but, by a mistake of the shipper, which the railroad company had no knowledge of, the shipment was consigned to W. H. Magee & Co., Prentiss, Miss.; which, of course, required the New Orleans & Northeastern Railroad Company to rout the shipment over the Mississippi Central Railroad to Prentiss, Miss. When the shipment arrived at Prentiss, the railroad agent there, being accustomed to delivering just such shipments from the same consignor to J. T. Magee & Co., and there being no other Magee & Co., at Prentiss, or receiving freight from that station, assumed that there was a mistake in the initials of the consignee, and delivered the goods to a drayman for delivery to J. T. Magee & Co. The latter was then, and is yet, as far as the record shows, a reliable mercantile firm. The shipment was on a straight, nonnegotiable bill of lading, and

was an interstate shipment. The question is whether Williams-Richardson Company, Limited, has a right of action against the New Orleans & Northeastern Railroad Company or should look to J. T. Magee & Co., for the value of the goods.

The mistake of the agent of the Mississippi Central Railroad Company at Prentiss, Miss., in delivering to J. T. Magee & Co., at that place a shipment consigned on a straight bill of lading to W. H. Magee & Co., Prentiss, Miss., was not only a very natural and excusable mistake, but it was induced by—and was the very natural and almost necessary consequence of—the mistake of the shipper, in consigning the shipment to W. H. Magee & Co., Prentiss, Miss., instead of consigning it to W. H. Magee & Co., Purvis, Miss. Why should a railroad agent be not excused for making a mistake for which any one else making it would be excused? The agent was accustomed to receiving and delivering regularly the same kind of shipments from the same consignor to J. T. Magee & Co., Prentiss, Miss. There was no other firm or company named Magee & Co., at Prentiss, Miss., or ever receiving freight at that station. The railroad agent there could not have imagined that Williams-Richardson Company might have another customer named Magee & Co., in another town and on another railroad in Mississippi, for whom the shipment might have been intended. It was only natural and reasonable for the agent to take it for granted that there was a mistake in the initials of the consignee, and to deliver the shipment to J. T. Magee & Co., Prentiss, Miss., for that was the only Magee & Co., at Prentiss, Miss., to whom he could deliver the shipment, and that was the Magee & Co. to whom he was accustomed to delivering such shipments from Williams-Richardson Company.

We must bear in mind that the shipment was on a straight, nonnegotiable bill of lad-

ing. There is no charge of negligence on the part of the carrier for delivering a shipment without requiring the production and surrender of a negotiable bill of lading. If the shipment consigned to W. H. Magee & Co., Prentiss, Miss., had been intended to be held for delivery there to the order of a firm bearing that name and domiciled and doing business in some other city, the shipment would have been made on a negotiable bill of lading. In fact, the shipper did not intend that the shipment should be held for or delivered to the order of W. H. Magee & Co., at Prentiss, Miss. There was therefore no breach of duty, or breach of contract, on the part of the railroad company in failing to deliver the shipment to a firm styled W. H. Magee & Co., at Prentiss, Miss. There was no such firm there, and therefore no possibility and no intention of delivering the goods to W. H. Magee & Co., at Prentiss, Miss. And surely the railroad agent was not obliged to hold the goods subject to delivery at Prentiss, Miss., to a firm styled W. H. Magee & Co., domiciled and doing business in some other town and on some other railroad in Mississippi.

It will hardly do to say that this suit is for damages for breach of contract. The plaintiff, as consignor, did not contract or intend to contract with the railroad company—and the railroad company did not contract or intend to contract with the plaintiff—to deliver the shipment at Prentiss, Miss., to the firm styled W. H. Magee & Co., domiciled and doing business at Purvis, Miss. That was the *form* of the contract between the parties, but it was a contract in *form* only, not in substance, because there was no intention on the part of either of the parties to make such a contract, and no intention or possibility of carrying it out. It was a blunder on the part of the shipper; and it was therefore either no contract at all or it was a contract whereby the carrier was to carry the shipment to Prentiss, Miss., and deliver it there to the plaintiff's customer, a firm named Magee & Co.—the only firm having that name in Prentiss, Miss.

It is suggested that the railroad agent at Prentiss, Miss., might have avoided the consequence of the shipper's mistake, if he (the railroad agent) had refused to deliver the goods to J. T. Magee & Co., at Prentiss, Miss., and had notified the shipper of his mistake, when he (the agent) observed that the shipment was consigned to W. H. Magee & Co., Prentiss, Miss. That is the same as to suggest that the railroad company should be held responsible for the shipper's mistake, because it was *possible* for the railroad agent, on the other line of railroad to avoid the consequence of the shipper's mistake, by thinking of the possibility that the shipment might not be intended for the shipper's regular customer, named J. T. Magee & Co., at Prentiss, Miss.—the only Magee & Co., in Prentiss, Miss.—but might be intended for another customer named Magee & Co., in some other town and on some other railroad in Mississippi. That doctrine would establish a bad precedent. Stated broadly, it means that the carrier is responsible for the shipper's mistake, if it is at all possible—even though it is very unlikely—for the carrier to check and avoid the consequence of the shipper's mistake. It sounds like invoking the doctrine of the last clear chance, in a suit which is either for breach of contract or has no foundation at all. If the railroad agent at Prentiss, Miss., under the peculiar circumstances of this case, had delayed delivering the shipment to the only firm styled Magee & Co., in Prentiss, Miss., on the supposition that the shipment might have been intended for some other firm styled Magee & Co., in some other town and on some other railroad in Mississippi, and, if it had afterwards developed, as was very likely, that the shipment was intended for the shipper's regu-

lar customer styled J. T. Magee & Co.—the only firm named Magee & Company in Prentiss, Miss,—and, if that firm had sustained a loss in consequence of the railroad agent's acting upon such an improbable and unreasonable supposition on his part, there would have been far more justice in holding the railroad company responsible for the loss than there is in this case.

There is no authority cited in the majority opinion to support the doctrine that the carrier is responsible for a wrong delivery, made in consequence of a mistake of the shipper, if it was possible, though not at all likely, for the carrier to avoid the consequence of the shipper's mistake. The carrier's responsibility in such cases ought to depend upon the circumstances peculiar to each case. If the circumstances are such—as they were in this case—that the carrier's mistake in making a wrong delivery was the natural and probable result of the shipper's mistake, the carrier is not responsible. That rule is sustained by the decisions referred to in the majority opinion in this case, as far as they are pertinent. In Stimson v. Jackson, 58 N. H. 138, for example, it is said:

"Carriers are not liable for a misdelivery made through a mistake made in the direction of a parcel, if such mistake is not known to the carrier, and he delivers the parcel according to the direction, and the known course of business at the place of destination."

The rule is repeated in Missouri Iron & Metal Co. v. Texas & Pacific Railway Co., 198 S. W. 1067, by the Court of Civil Appeals of Texas, viz.:

"If the carrier deliver the goods to one other than the consignee, or his duly authorized agent, and said goods are lost or injured thereby, the carrier is responsible, even though said delivery was made to a person whom the carrier in good faith, but erroneously, believed to be duly authorized * * * to accept and receipt for the goods. *Of course, this statement of the law is subject to the exception, that if the mistake in the delivery was caused or induced by the act of commission or omission of the consignor, himself, the carrier would be relieved from liability because of said mistake.*" (The italics are mine.)

In Lake Shore & M. S. Railroad Co. v. Hodapp, 83 Pa. 22, the railroad company's agent at the point of destination did not inquire of the shipper before delivering the goods to the wrong party. The shipper intended to consign the shipment to Leopold Hodapp, but by mistake consigned it to Leopold Hotelfa. Leopold Hodapp, being informed that the shipment had been made to him, inquired for it at the carrier's office, and although the package addressed to Leopold Hotelfa was there, was told that there was no package there for him (Leopold Hodapp). After the package had remained about two months in the carrier's office, the carrier's agent inferred that it belonged to Christian Leopold, who operated a hotel called Leopold's Hotel, where many immigrants stopped. When Leopold Hodapp learned that his package had been delivered to Christian Leopold, or to Leopold's Hotel, he sued for damages for the value of the package; but the court held that the carrier was not responsible for the wrong delivery, because it was the result of the shipper's mistake in directing the package wrong. The court said:

"Where a box improperly directed was delivered to a railroad company for transportation and was safely carried to its destination, and there, after having been securely kept for two months, and due diligence exercised to ascertain the consignee, was delivered, by reason of the improper direction, to the wrong person, the company was not liable for the loss."

The majority opinion in this case holds the carrier liable in damages to the shipper for a mistake which was not only a very natural and pardonable one on the part of the railroad company's agent, but which was the natural and almost necessary consequence of the mistake of the shipper himself. I respectfully dissent from the ruling.