SARKIS SALIBA *v.* NEW YORK CENTRAL RAILROAD COMPANY.

November Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed January 8, 1929.

*H. C. Shurtleff* for the defendant.

*Deane C. Davis* and *John W. Gordon* for the plaintiff.

MOULTON, J. This case has been here once before, when we upheld the declaration as against a demurrer, 101 Vt. 56, 140 Atl. 491. The plaintiff seeks to recover for damages sustained by a carload of bananas, from New York City, consigned to him at Barre, caused, as he claims, by an unreasonable delay in transit. Trial by jury was had, with verdict for the plaintiff. The defendant has excepted.

The shipment left New York City on January 19, 1927, at 5:15 P.M. It reached Mechanicsville, N. Y., on January 20, at 4:50 P.M.; left Mechanicsville at 10:20 P.M., and arrived at North Adams, Mass., at 6:30 A.M. on January 21. At this point, the crew of the train "tied up," since they had worked the maximum time and could go no farther under the Federal Hours of Service Act (45 U. S. C. A., §§ 61-66). A relief crew was sent out from East Deerfield, Mass., and the train containing the shipment left at 11:20 A.M., arriving at East Deerfield at 1:45 P.M. Here the car remained until 9 or 10 P.M., when it left for Woodsville, N. H., on the first regular train. It arrived at Barre about 9 P.M., January 23, and was delivered to the plaintiff on January 24, between 10 A.M. and noon. The evidence of the plaintiff tended to show that if it had not been for the delay at North Adams, the car would have reached East Deerfield in time to proceed to Woodsville (the next junction point) as a part of a train leaving East Deerfield at about 9 A.M. on January 21, and in such case, would have reached Barre at noon on January 22. The evidence of the plaintiff tended also to show that the usual time consumed by other shipments of bananas between New York City and Barre over the same route as the one in question was three days.

The shipper prepared the car and loaded the bananas. Before the bananas were placed in it the car was inspected by an agent of the shipper, and lined with two or more thickness of builder's paper. It was heated by the use of portable oil heaters, until the inside temperature was 74 degrees Fahrenheit. The heaters were then removed and the bananas placed on board. As they were loaded, they were inspected and found to be in good, green condition. The temperature of the car was determined upon consideration of the condition of the fruit, and the then temperature, the weather at the time of loading, and the weather through which the car was expected to run.

When the car reached Mechanicsville another agent (termed a "messenger") of the shipper took charge of it. He inspected the car and its contents, and found the inside temperature to be 62. The bananas were green; none were turning color at that time. No further heat was introduced. The messenger accompanied the train from Mechanicsville to East Deerfield, at which point he again inspected the car and its contents, and found the inside temperature to be 62 and about ten bunches of the bananas "showing color," that is, beginning to show a yellow tint, which was not, however, ripening so as to injure the fruit. The temperature outside the car, both at Mechanicsville and East Deerfield, was 36. With the fruit in its then condition and the temperature of the car as it was, the shipment could be carried in a closed car, such as it was in, for 36 hours without generating heat and ripening itself, and the messenger allowed that period of time before the fruit would spoil. When the car was delivered to the plaintiff at Barre, more than 36 hours after its departure from East Deerfield, the temperature of the car was 66, and the bananas were dead ripe, and for the most part unmerchantable.

When the car was inspected at Barre, a charcoal stove, containing fire, was found in one of the end refrigerator compartments. No explanation was given as to how or when it came there. The agents of the shipper, who had to do with the preparation and inspection of the car before and during transit, testified that they did not install it. No evidence upon the subject was adduced by the defendant. The bill of lading contained this clause: "Ventilation not to be changed except on specific instructions from shipper, owner or messenger in charge." But the compartment containing the stove was sepa-

rated from that containing the fruit; and the partition between was covered by three layers of heavy paper, and the testimony of the shipper's messenger was that the heat could not penetrate "except in just the ordinary filtration through paper, which would be very, very slow."

The claimed delay took place beyond the line of the defendant, which was the initial carrier, but no question is raised, or can be raised, as to the liability of the defendant for loss caused by the fault of its connecting carrier, which it is deemed to have adopted as its agent; this being an interstate shipment to which the Act of Congress known as the Carmack Amendment of the Hepburn Act [49 U. S. C. A. § 20 (11, 12)] applies. *Haglin-Stahr Co.* v. *M. & W. R. R. Co.,* 92 Vt. 258, 262, 263, 120 Atl. 940; *N. Y. P. & N. R. R. Co.* v. *Peninsula Produce Exchange,* 240 U. S. 34, 36-40, 60 L. ed. 511, 514, 515, L. R. A. 1917A, 193; *Baltimore C. & A. Co.* v. *William Sperber & Co.,* 117 Md. 595, 84 Atl. 72, 73.

We do not consider the defendant's exceptions in the order in which they have been briefed. The messenger in charge of the car was asked on direct examination:

"What is the usual running time between Mechanicsville and East Deerfield?"

The defendant's counsel objected, and, the question being permitted was allowed an exception. No ground of objection or exception was stated, and so the question is not for consideration. *Morgan* v. *Gould,* 96 Vt. 275, 279, 119 Atl. 517; *Eastern State, etc., League* v. *Estate of Vail,* 97 Vt. 495, 514, 124 Atl. 568, 38 A. L. R. 845; *Robinson* v. *Leonard,* 100 Vt. 1, 134 Atl. 706. However, the evidence was clearly admissible. *Newell et al.* v. *Smith,* 49 Vt. 255, 265, 266; *Stevens* v. *R. R. Co.,* 129 Md. 215, 98 Atl. 551, 553; *American Ry. Ex. Co.* v. *Peninsula Produce Exchange,* 142 Md. 422, 121 Atl. 240, 241, 242; *Ritchie* v. *Oregon Short Line R. R. Co.,* 42 Idaho, 193, 244 Pac. 580, 45 A. L. R. 909, 915.

After the messenger of the shipper had testified that he allowed 36 hours for the shipment to keep without ripening after leaving East Deerfield, he was asked on cross-examination:

"And if it should turn out that they arrived at Woodsville and held over there on Sunday, you knew that couldn't be done, didn't you?"

The question was excluded as a matter of discretion, and the following question was put to the witness:

"If you had known that this car was to reach Barre on Sunday night what different would you have done than what you did do?"

This was also excluded. An exception was taken to each ruling, the ground being that the court was limiting the cross-examination. The scope and extent of the cross-examination is a matter within the sound discretion of the trial court, and, in the absence of an abuse thereof, the ruling is not revisable here. *Shores* v. *Simanton,* 99 Vt. 191, 195, 196, 130 Atl. 697; *State* v. *Long,* 95 Vt. 485, 491, 115 Atl. 734; *Miller* v. *Pearce,* 86 Vt. 322, 324, 85 Atl. 620, 43 L. R. A. (N. S.) 332. As to the first question, the court expressly ruled as a matter of discretion; as to the second, we will presume, since nothing appears to the contrary, that it so ruled. *Murray* v. *Nelson,* 97 Vt. 101, 111, 122 Atl. 519; *Parkhurst* v. *Healy's Estate,* 97 Vt. 295, 296, 122 Atl. 895; *Capital Garage Co.* v. *Powell,* 98 Vt. 303, 312, 127 Atl. 375; *State* v. *Fairbanks,* 101 Vt. 30, 34, 139 Atl. 918. Abuse of discretion does not appear, and the exceptions are unavailing.

The same witness was asked on direct examination subject to exception on the ground of immateriality, what was the schedule time of the train in question at North Adams, on January 21, 1927. He answered that there was no schedule time at that place. He later testified, without objection, that the schedule time at East Deerfield was between eight and nine o'clock in the morning. No prejudicial error appears.

At the close of all the evidence, the defendant moved for a directed verdict, which motion was overruled and an exception taken. The first ground of the motion was that the evidence, taken in its most favorable light for the plaintiff, made out no cause of action against the defendant. This fails to point out any precise basis upon which it is predicated, and is therefore too general for consideration. *Porter Screen Mfg. Co.* v. *C. V. Ry. Co.,* 92 Vt. 1, 6, 102 Atl. 44.

The other grounds, briefly stated, are: (1) Because there was no such delay shown as would warrant recovery, the time taken for the shipment to move, with nothing more, being no basis for recovery; (2) because the damage was due to the inherent nature of the fruit, and therefore the defendant would

be liable only in case of negligence, of which there was no evidence; (3) because the shipper undertook to care for the fruit, and by a clause in the bill of lading, the carrier is not responsible for the fault or neglect of the shipper.

██ A carrier is not an insurer against delay; reasonable diligence to prevent it is all that is required. *Warren* v. *Portland Terminal Co.*, 121 Me. 157, 116 Atl. 411, 412, 26 A. L. R. 304; *New England Fruit Co.* v. *Hines*, 97 Conn. 227, 116 Atl. 243, 245; *Atlantic Fruit Co.* v. *Penn. R. R. Co.*, 149 Md. 1, 130 Atl. 63, 65. What is reasonable diligence is to be decided in view of the circumstances, and one of the circumstances is the perishable nature of the freight carried. *Smith et al.* v. *Bangor & A. R. R. Co.*, 115 Me. 223, 98 Atl. 737, 738; *Johnson* v. *N. Y. N. H. & H. R. R. Co.*, 111 Me. 263, 88 Atl. 988, 990; *Young* v. *Maine Central R. R. Co.*, 113 Me. 113, 93 Atl. 48, 49; *Stevens* v. *Northern Cent. R. R. Co.*, 129 Md. 215, 98 Atl. 551, 552.

It is said in *Parsons* v. *Hardy et al.*, 14 Wend. (N. Y.) 215, 217, 28 A. D. 521, that "the principle upon which the extraordinary responsibility of common carriers is founded, does not require that that responsibility should be extended to the time occupied in the transportation." In this respect carriers stand upon the same ground as other bailees and are responsible only for the exercise of due diligence. *Parsons* v. *Hardy, supra; Ritchie* v. *Oregon Short Line R. R. Co., supra,* page 916 of 45 A. L. R. (43 Idaho, 193, 244 Pac. 580).

██ The carrier is not liable for damages caused by the fault of the shipper or the inherent nature of the goods. *Haglin-Stahr Co.* v. *M. & W. R. R. Co.*, 92 Vt. 258, 261, 102 Atl. 940. Especially is this so where the freight is perishable and the shipper places an agent in charge of the goods, who accompanies them during transit. *Atlantic Fruit Co.* v. *Penn. R. R. Co., supra,* p. 66 of 130 Atl. (149 Md. 1). But if the carrier itself is guilty of some negligent act or omission without which, notwithstanding the fault of the shipper, the loss would not have occurred, it is liable. *American Ry. Ex. Co.* v. *Ewing Thomas Converting Co.* (C. C. A.), 292 Fed. 335, 338; *Weaver* v. *So. Ry. Co.*, 135 Mo. App. 215, 115 S. W. 500, 501; *McCarthy et al.* v. *L. & N. A. R. R. Co.*, 102 Ala. 193, 14 So. 370, 48 A. S. R. 29. Where it is shown that the goods were delivered to the carrier in good condition, and by it to the consignee in bad condition, the

burden is upon the carrier to prove that the damage was due to a cause for which it was not responsible. *Mann* v. *Birchard*, 40 Vt. 326, 338, 94 A. D. 398; *Saliba* v. *N. Y. C. R. R. Co.*, *supra*, 101 Vt. 59, 140 Atl. 491. And this is so, although the goods are perishable in nature, in the absence of a stipulation to the contrary in the bill of lading. *New England Fruit Co.* v. *Hines, supra; C. & O. R. R. Co.* v. *Crenshaw & Co.*, 148 Va. 48, 138 S. E. 467, 53 A. L. R. 990, 994, and see cases cited in note p. 1017.

The motion for a verdict was properly overruled. Under the evidence in the case, we think the question whether the delay in delivery and the damage to the bananas were proximately caused by the negligence of the defendant were for the jury. The tendency of the evidence upon these points has already been noted, and there is no need to rehearse it here.

The court charged the jury that the evidence tended to show that the delay at North Adams was an unusual delay; that the defendant had not attempted to excuse or explain it by showing that no other train crew was available; and that it was not within the power of the carrier, in the exercise of ordinary care and diligence, to continue the train to East Deerfield in time to connect with the train going north at nine o'clock in the morning; and that the failure to excuse or explain the delay in itself raised the natural presumption of negligence and was sufficient *prima facie* evidence of the want of due and reasonable care on the part of the defendant in the transportation and delivery of the goods.

To this the defendant excepted. It is doubtful, to say the least, whether the exceptions taken to this portion of the charge were sufficiently explicit to apprize the court of the precise grounds upon which they were predicated (*Morgan* v. *Gould, supra; Kimball* v. *Ins. Co.*, 98 Vt. 192, 207, 126 Atl. 553; *Higgins, Admr.* v. *Metzger*, 101 Vt. 285, 143 Atl. 394, 399; *Cummings* v. *Ins. Co.*, 101 Vt. 73, 82, 142 Atl. 82), but we have given consideration to the claims made in the brief.

It is argued that the undisputed evidence showed that the delay at North Adams had nothing to do with the damage to the shipment, and that it reached East Deerfield in perfect condition, and in support of this contention our attention is called to the testimony of the messenger, who testified on cross-examination that the delay in question did not injure the

fruit, and that at East Deerfield the shipment was in good condition. But the question is not whether the ripening of the fruit took place during the time the train remained at North Adams, or at any other point, but whether this delay was the proximate cause of the ripening before delivery to the plaintiff. *Davis & Gray* v. *C. V. R. R. Co.*, 66 Vt. 290, 296, 299, 29 Atl. 313, 44 A. S. R. 852. As we have seen the evidence tended to show that, had it not been for the "tie-up" at North Adams, the shipment would have reached East Deerfield in time to have proceeded upon a morning train. Whether or not it was the proximate cause of the damage was, under all the circumstances, a question for the jury. *Young* v. *Maine Central R. R. Co.*, 113 Me. 113, 93 Atl. 48, 50; *Smith & Hoyt* v. *Bangor & A. R. R. Co.*, 115 Me. 223, 98 Atl. 737, 738; *Stevens* v. *Northern Cent. Ry. Co.*, 129 Md. 215, 98 Atl. 551-553. A somewhat similar situation was presented in *Johnson* v. *N. Y. N. H. & H. R. R. Co.*, *supra*; where a delay in switching a carload of fruit from the line of one carrier to that of another, caused it to miss the first regular outgoing train on the latter road, with a consequent later arrival at the destination, and damage. The liability of the initial carrier was held to be a question for the jury. See, also, *Stockman* v. *B. & M. R. R. Co.*, 117 Me. 35, 102 Atl. 560, 562.

It is said, further, that no presumption of negligence was inferable from the delay in question. But the charge was without error in this respect. As the court said, the evidence tended to show that the delay at North Adams was unusual, and no explanation was offered by the defendant why another train crew was not available, or why by the exercise of ordinary care and diligence the shipment could not have been continued to East Deerfield in time to connect with the early train. This being so, the rule applicable is that laid down in *Mann et al.* v. *Birchard et al.*, 40 Vt. 326, 328, 94 A. D. 398, that an unusual and unexplained delay and failure to deliver the property according to the general course of business raises a natural presumption of negligence, and is sufficient *prima facie* evidence of a want of reasonable care.

The defendant argues that it cannot be held responsible for a delay caused by the operation of law. But that the statutory working time of the crew would expire before East Deerfield would be reached; that the shipment was of a

perishable nature, and liable to damage unless promptly forwarded to its destination; and the times at which the connecting trains left East Deerfield, were facts within the knowledge of the defendant. While a carrier may be excused for delay caused by the intervention of a *vis major*, yet it is bound to exercise at least ordinary foresight in anticipating the obstruction and due diligence in exerting the proper means of overcoming it, and in accomplishing the transportation as soon as it ceases to operate. *Bowman* v. *Teall*, 23 Wend. (N. Y.) 306, 310, 35 A. D. 562. So, too, where the defense is that the injury to property in the carrier's possession was caused by an act of God, if the damage occasioned by the operation of natural causes might have been avoided or prevented by human prudence, foresight, pains and care, reasonably to be expected from the carrier, but not exercised by it, it is responsible. *Porter Screen Mfg. Co.* v. *C. V. Ry. Co.*, 92 Vt. 1, 11, 102 Atl. 44. Whether, in the instant case, due diligence had been exercised by the defendant, in anticipating and avoiding the effects of the "tie-up," was for the jury to say.

The defendant excepted to the charge of the court that, upon showing that the goods were deliverd to the carrier in good condition and arrived in bad condition, the burden was on the defendant to show that the damage was caused by some act of the shipper or by reason of the inherent nature of the bananas. It is argued that since the shipper undertook to care for the fruit and keep it in good condition while in transit, no burden could rest upon the defendant to show that the damage was caused by the act of the former; and, furthermore, that the ripening of the bananas was due to their inherent nature.

But the obligation so assumed by the shipper did not absolve the defendant from its duty to exercise reasonable diligence to avoid delay; and, as we have seen, whether such diligence has been exercised is to be determined with regard to the perishable nature of the freight. The burden of avoiding responsibility was upon the defendant. *Mann* v. *Birchard, supra*. There was no error in the respect claimed.

The defendant excepted to the charge submitting the questions of reasonable care on the part of the defendant and whether the time taken to transport the shipment was reasonable. What we have said regarding the motion for a verdict is applicable here. The charge was without error in this respect.

■ An exception was also taken to the submission of the question whether "this was a reasonable time without regard to whether the time was the proximate cause of the delay or deterioration of the fruit." But the jury were told that they must find a failure to transport and deliver within a reasonable time, and that such failure was the proximate cause of the damage, in order to entitle the plaintiff to recover. This exception is not sustained.

■ Another exception is to the charge that if the jury should find from the evidence that if the transportation and delivery of the bananas in a damaged condition might have been avoided or prevented by human prudence or foresight, pains or care, reasonably to be expected of the carrier, but not exercised by it, the defendant was liable, that is, even with the inherent nature of the bananas to decay the defendant and the other carriers were bound to exercise ordinary care and prudence in transporting them and preventing them from arriving in a decayed condition. The criticism here appears to be the use of the word "prevent," and it is said that the care of the bananas was in the hands of the shipper, and that if the defendant did no act to cause the decay of the fruit, it was no part of its duty to prevent it. But the language of the court, especially when read in connection with other parts of the charge, means only that the defendant would be liable for damage caused by the lack of reasonable care and foresight on its part or on the part of its connecting carrier in the transportation and delivery, having regard to the inherent tendency of the bananas to decay. This exception is not sustained.

■ Exception was taken to the failure of the court to charge that the shipper assumes the risk of ordinary delays in transportation. It may be indicated that the shipper is not a party to this proceeding, but if we assume that the exceptor intended to say the "plaintiff," and the court so understood it, the exception is unavailing, for the jury were clearly given to understand that an unusual and unexplained delay was essential to the defendant's liability.

■ Another exception is to the failure to charge that the time taken for the shipment to move from New York to Barre, as shown by the evidence, does not establish negligence. This, as has been pointed out, was a question for the jury.

The cost of the carload of bananas was $617.40. The plaintiff was able, after delivery to him, to sell a portion of it, to peddlers and others, to the amount of $273.00. The sum paid by him for freight charges was $119.00. The court charged that, if the verdict were for the plaintiff, he was entitled to recover, among other items, "the freight on this carload." The exception to this instruction is upon the ground that since a part of the shipment was saved, that part was not entitled to free freight, and that the court should have charged that the plaintiff could not recover the freight on the part which he salvaged because the allowance of this item of damages is, in effect, a violation of that section of the Interstate Commerce Act which prohibits every kind of rebate, drawback, or other device whereby a greater or less sum is collected from one person than from another for a like kind of service.

In other respects the charge on this subject, not being excepted to, has become the law of this case; and we are not called upon to pass upon the soundness of the rule of damages, as stated by the trial court, otherwise than is involved in this exception.

We confine our attention to the specific objection made below. *Townshend* v. *Townshend,* 84 Vt. 315, 318, 79 Atl. 388; *Massucco* v. *Tomassi,* 80 Vt. 186, 192, 67 Atl. 551. Questions not raised in the trial court are not for consideration here. *Capital Garage Co.* v. *Powell,* 97 Vt. 204, 210, 211, 122 Atl. 423; *Grapes* v. *Willoughby,* 93 Vt. 458, 461, 108 Atl. 421; *Land Finance Co.* v. *St. Johnsbury Wiring Co.,* 100 Vt. 328, 332, 137 Atl. 324; *Temple* v. *Atwood,* 100 Vt. 371, 372, 137 Atl. 321; *Higgins, Admr.* v. *Metzger,* 101 Vt. 285, 143 Atl. 394, 399.

The objection is without force. In *Penn. R. R. Co.* v. *Olivit Bros.,* 243 U. S. 574, 585, 586, 61 L. ed. 908, 913, 914, 37 Sup. Ct. 468, 472, it is said by Mr. Justice McKenna:

"The fourth contention is that plaintiff should not recover as part of its damages the freight paid upon delivery at destination. The contention is rested upon the prohibition of the Interstate Commerce Act against deviation from the filed tariffs and schedules and against rebates and undue preferences and discriminations. It is not asserted in the present case that there was an evasion of the statute or an attempt to evade, but that the possibility of such re-

sult makes the recovery of freight illegal. It is urged, besides, that the melons were carried to destination and there sold by plaintiff or on its account, and that the freight thereby accrued and was properly paid * * * * * * But the cited authority shows that to be the rule when the loss or damage results from no fault or negligence of the carrier.''

In the case last cited, the bill of lading contained a stipulation that the amount or loss of damage for which the carrier should be liable should be computed on the basis of the value of the property, including the freight charges, if paid, at the place and time of shipment. This does not occur in the bill of lading before us. But the principle is not effected by its absence. The point, so far as is here material, is that the allowance of freight charges, paid at destination, upon perishable goods, injured, but not entirely destroyed, by delay in transportation, caused by the negligence of the carrier as an item of damages, is not a violation of the Interstate Commerce Act, there being no evasion or attempt to evade the provisions of that statute; neither of which appears in the case before us.

What we have said in the foreging opinion disposes of all the questions raised by the defendant's brief. No error is shown by the record.

*Judgment affirmed.*