Weygandt, C. J.,
 

 dissenting. As was held by this court without dissent in the case of
 
 Wilson
 
 v.
 
 Pennsylvania Rd. Co.,
 
 135 Ohio St., 560, 21 N. E. (2d), 865, “in an action brought by an owner of livestock against a terminal carrier to recover damages sustained during shipment, the owner makes out a
 
 prima facie
 
 case when he introduces evidence that the livestock was unaccompanied by himself or his caretaker, was received for shipment by the initial carrier in good condition and delivered at the destination by the terminal carrier in an injured or damaged condition.”
 

 Was the unaccompanied shipment of livestock in the instant case received by the initial carrier in good condition and delivered at the destination by the terminal carrier in an injured or damaged condition?
 

 According to the evidence disclosed by the record, the plaintiff purchased 116 calves at Woodward, Oklahoma. All of them were delivered to the railroad yards in that city and were placed together in one pen where they were examined by a veterinarian who testified that “they were an exceptionally nice group of calves, fat, well fed, uniform in size, and
 
 healthy in every respect.”
 
 (Italics supplied.) One-half of the calves were placed in one car and the second half in another of the same size. The second carload made the trip from Woodward to Wooster in five and one-half days and arrived in “perfect” condition. The first carload required one day less for the trip, but when these calves
 
 *652
 
 arrived “they were mostly laying down; * * * normal western cattle would move, but these cattle did not move, they were all in; they were in an emaciated condition * * * they had no spirit left, it had been knocked out of them; * * * numerous of them had both eyes gone; their eyes were gray and scratched; * # * their skin was not torn but they were in awful shape as though they had 'been in a wreck.” Another witness testified that one calf was dead and that the eyes of some of the calves “were scarred and it seemed as though something had happened to them.”
 

 Furthermore, a veterinarian testified that calves become more susceptible to the disease of hemorrhagic septicemia if subjected to mishandling, negligence or exposure.
 

 On the basis of either trauma or disease it would seem that the Court of Appeals manifestly was in error in holding that the cumulative effect of this testimony constitutes no evidence of negligence in handling the one caiioad of calves while in the exclusive possession and control of the carriers.
 

 Bell and Williams, JJ., concur in the foregoing dissenting opinion.